Thank you, Your Honor. I am Daniel Kaplan. I represent the appellant Brandyn Blatchford. I am going to try to watch the clock and preserve about two minutes for rebuttal. Sure. Getting back to the matter of last night's debate, if you woke up this morning wondering what was going to be the chief difference between this morning's first argument and last night's debate, I can answer that. The difference is, in this argument, both sides are in about 95 percent agreement, as far as I can tell. The scope of the dispute is quite narrow. We both agree that in order to impose a condition of supervised release that may require the defendant to take medications that may implicate a significant liberty interest, the judge would have had to make certain findings under Williams and its progeny. How could he do that if there hasn't been a medical evaluation? Well, that's exactly the problem. But our case law says that in the event that the court imposes that condition, we can construe it as being limited to those medications which, for want of a better term, are not antipsychotic or would otherwise deprive the defendant of a significant liberty interest. So at this point, if we simply construe that condition as being so limited, why are you here? I'm here because it is appropriate to require that it be construed in that limited way as one measure to address the problem, but it's not appropriate to use that as a justification for not remanding. But what's the problem at this point? That's the concern I have. Has your client actually undergone any kind of a mental health evaluation? I don't know the answer to that. So I'm going to take that as a no, and then if that's the case, then what is it that we're going to ask the district court to do on remand if we construe the condition in the narrow way that our case law suggests? You're going to ask the district court to make the findings or not make the findings, to undergo the review that's necessary before imposing a condition of this type. How can the district court make any findings in the absence of an evaluation, which, as far as you know, has not been done yet? In every one of the five cases that we both agree in this appeal govern this issue, the court did not simply construe the condition narrowly, as you note. They did do that, but they didn't stop there. They didn't say no remand is required. In every one of those five cases, they remanded. And there are three important reasons why that's necessary. The first reason is that it's necessary to respect the province and discretion of the district court. If you simply construe the condition as meaning a certain thing without any basis for thinking that's what the district court actually intended, you're not respecting the province of the district court. Mr. Kaplan, I can't see on what basis the district court can exercise any discretion here until it has a problem before it. Of course, the district court ordered medication, did it not? The district court ordered medication, but without undergoing the review necessary to determine whether that actually is appropriate. If medication was prescribed, but as far as we know, no medication has yet been prescribed. What prevents you from simply coming back on another appeal if an evaluation prescribes medication, orders medication, and your client refuses to take it? Wouldn't that issue then be appropriate for appellate review and challenge? Yes, but the reason that's not one of the reasons that's not a good idea is that my client's going to be sitting in jail for objecting, for refusing to take a medication he never legitimately could have been required to take. Well, we don't know that. Well, we won't know it until he comes up on appeal, is your argument. Exactly. That's exactly the problem. Is there a mechanism for the defendant to challenge efficiently whatever medication is prescribed that he thinks goes over the line? Well, the defendant would have to refuse to take it. He would be found in violation, presumably put in custody, and then he could challenge it on appeal. At some point months later, perhaps he would win his appeal and it would be discovered that he never should have been required to take it. Why couldn't the district court handle it the same way we handle a contempt proceeding and stay the order of confinement until such time as you can complete your appellate review of the condition? It could, but I can't tell you it would. I can tell you that in my experience, when I've tried to get stays from the district court pending appeal, it's extremely hard to do. I almost never succeed at that. But most people would like us to be a standby panel for district courts and give advice of how it's going to break later, but that's not what we do. We wait until it's ripe. Well, in Williams and in Weber, the ripeness issue was raised. The government argued there wasn't ripeness, and the court in both of those cases said that the issue was ripe as soon as the condition was imposed, that there was not an issue of ripeness. I'm not sure it's a technical ripeness issue so much as it's a prudential exercise of our appellate authority. And I don't see how your client is being deprived of the opportunity to challenge a condition that has yet to be imposed. You're making an assumption based on my what the record doesn't answer, which is that it hasn't been imposed. It may have been imposed. It may have been imposed the day after the court issued its ruling. I don't know. It's not in the record. There's nothing in the record that suggests that I should make that assumption. So at this point, all I know is that the district court said, I've got a man before me who has a severe drinking problem. The probation officer says, I think we need to rule out that it may be as a result of some kind of a mental problem. And the district court orders a mental health evaluation and uses the standard language, and the defendant is ordered to submit to one and then to follow whatever drugs are prescribed. Our case law says if they infringe on a liberty interest, he's got to make certain findings. But none of that's happened yet. Well, it may have happened. I'm telling you that the record doesn't answer whether it's happened. Well, I can't assume that it has on a blank record. I think you must assume that it has under the case law. This condition was imposed. Is your client in jail right now? He's out of custody right now. So I'm going to have to assume from that fact that he has not yet been found to have violated the condition that the district court imposed. But he is still subject to this condition. Well, he hasn't been evaluated yet. Well, he may have been evaluated. That's what I'm telling you. I don't know. The record doesn't reflect whether he has or hasn't. All right. But that's okay. But since you're telling us the parade of horribles, has he been evaluated? Since I'm – I beg your pardon? Has he been evaluated? You're an officer of the court.  I literally don't know. You do know he's out of custody, though. I know he's out of custody. Now, in the Williams case, this court made the observation, footnote 9, that it was unclear whether the district court would, if it applied the proper standard, have imposed a condition requiring medication at all. And the same is true here. If the court were simply to assume that – if this court were simply to assume that the district court, having – if it were to go through the proper procedures under Williams and Weber, would impose a medication condition at all, it's making an unfounded assumption. It may be that if you remand this, as every single case, Williams, Weber, Cope, Esparza, and Daniels, all of those remanded, if you do that, the district court will say, now that I'm applying the proper standard, now that I'm looking at the proper factors and making the findings or not making the findings I have to make, I'm going to decide that I don't want to impose this condition at all. Well, Mr. Kaplan, if the mental health evaluation reveals – produces a report that says, this man is an alcoholic, but it's not based on any kind of a mental health condition, and therefore there is no – there will be no drugs prescribed, we're right back where we are right now. Well, there's another problem with this idea that he should have to make a challenge when a particular drug gets prescribed, and that's the point that was made in the Williams case, which is that would shift the burden. The burden is on the government to show that a condition like this is necessary. If you say, well, just as the district court judge said in Williams, I think it should just be upon the defendant to make an objection when he has a problem with a particular condition, you're shifting the burden to him to show it's not necessary, and that's inappropriate, Williams says, because the burden rests on the government. I'm going to reserve the balance of my time. You may. Good morning. Joan Rufinock, District of Arizona, appearing on behalf of the United States. In this case, there doesn't need to be a remand because, contrary to counsel's position, in Esparza and Daniels, there was a remand because the court did not have the benefit of COPE. In COPE, there was a remand because there were special conditions of treatment and medication that were not made known. The condition was not made known to the defendant prior to the disposition hearing. Okay. Can you just clarify something for me? Yes. The order says that the mental health program may include taking prescribed medication. Now, counsel has been quizzed as to whether or not that's right. The district court didn't specify any limits on the kind of medication. So how is this defendant on supervised release going to know whether or not the medication fits within the parameters that our jurisprudence says requires special findings of need? In the absence of special findings, which were not made in this case, it's the government's position that the district court's order must be narrowly construed. By whom? By the district court. Yes, but my question is, how does the defendant know when the jailer or when the medical health official says, I'm going to prescribe this, whatever the drug is, and the defendant says, I can't take that, I'm not going to take that, that's going to mess up my head. And he's entitled to parole. And he refuses. He's in violation of parole at that point, or in violation of special release, supervised release terms? Not necessarily. Well, look, this is the guy's freedom. He's out. If he makes the wrong call, he's going to go to jail. But that's not necessarily true. Well, it may not be necessarily true, but the whole idea is to allow the person to know, just like any injunction, one specifies so that the parties who are affected by it don't violate it unintentionally. That's standard law for injunctions. It's the same concept underlying conditions of supervised release. They need to know what they're supposed to do and not do. I agree with that. And if this Court were to say that we are affirming the district court's order narrowly construed to not include any medications that would affect the defendant's significant liberty interests. Okay. So why are we spending our time up here, taking up your time, counsel's time, this panel's time, doing something that the district court should have put in his order instead of saying, well, we will construe it narrowly? I think basically that counsel dropped the ball in the district court. Counsel? No. The government? I think both counsel did, frankly. And I say that because. . . Because the government is seeking the impositions. The government is the institutional litigant. So I would say primary responsibility falls on the government. In that case, there's a secondary responsibility, which was this condition was known to all the parties 10 days prior to the disposition hearing. This specific language. Well, that just says it's to me it's poor lawyering to have us, because this is not the first case that's come up to the Ninth Circuit or to judges on this panel, where we have done the job of narrowly construing in the face of pretty clear authority, very clear authority, that there have to be limitations on the scope of medication. Otherwise, there crosses into the field of liberty interest. And if the Court doesn't intend to impose anything of that sort, it's a simple matter of saying so. Wouldn't you agree with that? I think the Court could have said so in this case, but I also think that it's a general proposition that the district court is presumed to know the law. Yes. All of these cases, Cope, Esparza, Daniels, Williams, were all decided well before this case went to the district court. Correct. The issue before the district court was do we do a mental health evaluation on this man, because his behavior seems odd in the opinion of the probation officer. Has he been evaluated? It's my understanding that he has been, but that he's refusing any treatment until the appeal has been decided on the advice of counsel. And so just to finish up, the manner in which this is challenged, how does the defendant challenge it without having to suffer time in jail while it's all going on? You're saying that, as in this case, the government won't move to revoke supervised release until the issue of whether the drug is within the proper parameters is resolved by the district court? Well, yes, because what would happen practically is the probation officer would get a report from the mental health official that this person is noncompliant. The probation officer writes up the report, sends it to the district court. It also goes to the parties, at which point counsel says this is not within the narrow scope of what the Ninth Circuit said that you are aware of. The way the Ninth Circuit has said. I'm talking about absent our having to clarify the order. You're burdening this Court with the activity of putting in specificity to the district court's order, and now you're saying that because the district court didn't do it, the district court now has to comply with our construing of the district court's order. If you assume that the district court understood the law at the time and didn't include specific findings, then the district court's order is narrowly construed by the district court and by this Court. Okay. So are you, what you're asking us to endorse in this case is a regime that whenever a defendant gets a medication order and doesn't make the record or doesn't get the limitations put into it, either they've waived the objection or it has to come up to the Ninth Circuit to read in what the district court should not have, should have put in. Therefore, we sort of supervise it, and if the district court doesn't do what it's supposed to do, come up to the Ninth Circuit, we'll narrowly construe it. Now he's got a supervised release order, treatment order, which is, I'm not quarreling with the substance of what's done, but now has explicit the narrow construction so that he knows that the treatment, the medication that's being prescribed, he can, without risk to himself of somehow violating the order, refuse to take it. As Judge Tallman pointed out, what they were looking for in this case was an evaluation. The district court had nothing at that point to make any specific findings on. Therefore, the district court kept it in, I won't say, I don't want to use the term vague because that's not good, but the district court said you may have to take medication. In light of this Court's case law that that's narrowly construed, if there are no specific findings, it was a reasonable order because the court wanted to keep open the options for the mental health treatment provider and the probation officer to provide the defendant with the services that he needed. Okay. So the rule of this case would then be if the district court doesn't make any findings or specify the limitations on the medication, it's understood as a matter of law that it cannot go beyond the limits of our jurisprudence in the various cases, basically drawing the line of psychotropic drugs. Is that what you're saying? Yes. Psychotropic drugs, chemical castration, or I forget the third one. Well. But those that affect significant liberty interests, yes. Okay. But what did the mental health evaluation say? That I don't know. Well, why didn't either you or Mr. Kaplan supplement the record with the evaluation? Do we know whether or not any medication's been prescribed? You say he's. I mean, what if they said no medication and then we're talking about this and it's moot? In hindsight, I suppose the better practice would have been to attempt to supplement the record. I did not do that. I attempted to speak with the probation officer, and I got just a voicemail in return. Well, how do you know that he's refusing treatment on advice of counsel? Based on a voicemail from the probation officer. Who presumably talked to the defendant. Who was his supervising agent at one point, yes. But we don't know what type, I mean, we don't know what the treatment is. I got, I can't say for sure, so I don't want to speculate. Is that advice of this counsel or advice of trial counsel? Or is that the same person? I don't want to speak for Mr. Kaplan. I believe that it's trial counsel. I'll ask Mr. Kaplan when he gets back up, but I assume he's been represented by the Federal Defender's Office through this entire matter. Right. And continues to be. Okay. Thank you. I had a hunch these questions might come up, and before I came out here, I e-mailed the attorney, Elizabeth Krusech, who handled this hearing and asked her if she had an update, and she told me she didn't know, and I think she said it had been transferred to another attorney. So I wasn't able to answer that information. So you don't know whether what the probation officer reported is true or not? I don't know. I don't know. Well, let me ask you this. Suppose that the evaluation required Mr. Blatchford to take Antabuse. To take what? Antabuse. Do you know what that drug is? I don't. It basically makes you sick if you start drinking again. Okay. Would you challenge that chemical? Well, you know, he might not want to take that, and then we might have to raise a challenge, and then he might have to go to jail and wait to see whether that falls, which side of the fuzzy line that falls on. But wouldn't it be better if we had a clear factual record that told us that that's, in fact, what's happened here? I mean, I feel like we're shadowboxing, and frankly, I think the fault is as much yours as it is the government's. I think you're both at fault here for – I feel like you're asking us to micromanage the district court's imposition of supervised release without giving us the relevant facts on which we can even do that. Your Honor, with all respect, the relevant facts should be developed by the district court through the means of a remand, which is the method that was used in every one of these cases, Williams, Weber, Cope, Esparza, Daniels, every single one, remand. And in Daniels, I would like to know – Well, when you talked to your colleague, did she acknowledge receipt of a mental health evaluation report? She is one of the parties, presumably, who got a copy. She didn't say anything about a report. She just basically said she didn't know the latest, and she wasn't sure who had taken on the case. I just – if I – in Daniels, the court said we're remanding so an appropriate record can be developed, but if no such record is developed, then the condition will be construed as limited to medications that don't implicate a liberty interest. So the first choice, clearly, in Daniels and in every other case, but the language here shows it, the first choice is to give the district court a full crack at making this determination properly. It's only – When is Mr. Blatchford going to be finished with supervisory leave? It's in the brief. I think there's an estimate in there sometime, I think, next year. It looks to me like it was pretty soon. I think it's going to be fairly soon. Actually, no. My estimate was June 1st of 2016, so there's a few years left. Oh, it's – all right. Okay. Are there any questions? Thank you. Thank you. I think you both know what we would have liked. Thank you both. We appreciate the argument. The case is submitted.
judges: Fisher, Tallman, Callahan